FILED

2005 Jan-19  PM 12:54
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

JOYCE TATOR,                          }
                                      }
    **Plaintiff,**                     }
                                      }
v.                                    }        **Case No.:  CV 03-P-0703-S**
                                      }
HOUSING AUTHORITY OF THE              }
BIRMINGHAM DISTRICT,                  }
                                      }
    **Defendant.**                     }

## MEMORANDUM OPINION

## I.   BACKGROUND [1]

Pending before the court are Defendant Housing Authority of the Birmingham District's

("HABD") Motion for Summary Judgment (Doc. #30) filed on May 27, 2004, and Motion to Strike

(Doc. #49) filed on December 9, 2004.[2]  The court extended the dispositive motion deadline after

hearing oral argument from the parties at its August 2, 2004 motion docket. (Doc. #42).  On October

29, 2004, HABD supplemented its evidence and brief in support of summary judgment. (Docs. #44,

#45).  After obtaining an extension of time, Plaintiff opposed HABD's Motion for Summary

Judgment on November 24, 2004.[3]  (Docs. #47, #48).  HABD filed its reply brief on December 13,

---

[1]On January 8, 2004, Plaintiff filed a motion to amend, which the court granted on January 15, 2004, and which resulted in the voluntary dismissal of count IV of Plaintiff's Complaint. (Docs. #23, #25).

[2]The court is not inclined to grant HABD's Motion to Strike.

[3]Plaintiff's opposition to summary judgment includes a request to strike the affidavit provided by one of HABD's witnesses–Director of Housing Management, Jimmie Lacey.  While the court will not strike the affidavit, it does acknowledge the inconsistencies contained in the sworn statement and has given those statements little weight accordingly.

2004. (Doc. #50). As discussed more fully below, no material facts are in dispute, and HABD is entitled to judgment as a matter of law. Accordingly, summary judgment in favor of HABD is due to be granted.

## II.    STATEMENT OF FACTS[4]

The HABD is a statutory entity that administers public housing within the City of Birmingham. (AF No. 1). HABD is governed by a five member Board of Commissioners. (AF No. 2). As the governing policy maker the Board approves Human Resources Policy and Procedure. (*Id.*). The Housing Authority Act of the Alabama Code grants the Board authority to do whatever necessary to exercise powers granted to it by the Act. (AF No. 3). Therefore, the Board has the authority to make and approve its Human Resource policies and procedures. (AF No. 4).

Plaintiff, was first employed by HABD on November 16, 1982. (AF No. 5). HABD discharged Plaintiff on September 17, 2002. (AF No. 7). At the time of her dismissal, Plaintiff was employed as an utility analyst in HABD's Maintenance Department. (AF No. 8). Plaintiff's job duties as utility analyst included monitoring resident and HABD utility accounts. (AF No. 9). At the time of her discharge, Plaintiff's supervisor was James Dunn. (AF No. 11). The Maintenance Department Director was Maurice Sturdivant. (AF No. 12).

On January 10, 2002, HABD resident Timothy Moore suffered a disconnect of his power service resulting in the loss of food items in his refrigerator. (AF No. 13). On January 17, 2002, Moore reported the loss to HABD Housing Manager Jim Ulgen. (AF No. 14). Mr. Ulgen was the onsite manager at the housing complex where Mr. Moore lived. (AF No. 15).

---

[4]The court has generated the following statement of facts by comparing Doc. #44 with Doc. #47. The court has also studied Doc. #50 in compiling these facts. The acronym "AF" stands for admitted fact and "DF" stand for disputed fact.

2

Mr. Ulgen submitted a report to HABD Director of Housing Management, Jimmie Lacey, which stated that "Alabama Power disconnected the service thru no fault of this resident." (AF No. 16). The report further stated that Moore's account was "placed in HABD's name in error on 4/1/01." (AF No. 17). It was standard procedure for the Housing Manager's damage report to be submitted to the Director of Housing Management for a determination. (AF No. 18). Based on the report, Mr. Lacey authorized a reimbursement to Moore in the amount of $137.91. (AF No. 19).

On January 24, 2002, Plaintiff submitted a written grievance to Mr. George Pegues, Deputy Director of Operations for HABD, in reference to the Moore incident. (AF No. 20). The grievance stated that "false claims were made under the banner of utility operation for the purpose of unwarranted financial reimbursement to the resident . . . Timothy Moore as per Jimmie Lacey." (AF No. 21). As a solution to her grievance Plaintiff requested a (1) retraction of the January 17, 2002 damage report, (2) an upgrade in her position, and (3) access to various reports. (AF No. 22). The comments Plaintiff sought to be retracted from the January 17, 2002, damage report stated that Moore's power was disconnected through no fault of his own and that the power account had been put in HABD's name erroneously. (AF No. 23). Plaintiff wanted a retraction of the damage report comments and an apology for those comments because they placed blame for the improperly disconnected power on her, and she was concerned about the effect the incident would have on her performance evaluation. (AF No. 24).[5]

Mr. Pegues was unable to grant Plaintiff's request for access to finance reports or an apology.

---

[5]HABD maintains in its statement of facts that Plaintiff was involved in several other incidents of disconnected power which should not have taken place, prior to the one involving Moore. Plaintiff has adequately disputed this evidence. (DF Nos. 10, 25, 26). Also, Plaintiff has produced evidence that HABD did not consider her work history in connection with the decision to fire her. Doc. #48 at Ex. B. at 68.

(AF No. 27). On February 19, 2002, Plaintiff withdrew her grievance. (AF No. 28). Plaintiff admits that in return for her retraction of the grievance, she was promised a promotion by Mr. Pegues. (AF No. 30). Although Plaintiff states that she felt coerced into making the retraction by Mr. Pegues, no evidence exists that Mr. Pegues threatened to discipline her or otherwise cause her to suffer a tangible job detriment in the event that she chose to stand by her January 24, 2002 grievance. (AF No. 30; DF 31).

When the Board did not grant a position upgrade to Plaintiff in June 2002, she renewed her grievance with a July 8, 2002 memo to Ralph Ruggs, Executive Director. (AF No. 32). In the July 8, 2002 memo, Plaintiff accused Mr. Lacey and Mr. Pegues of the crime of fraud, in addition to cover up, corruption, and coercion in relation to the reimbursement to Moore. (AF No. 33). On July 12, 2004, Mr. Ruggs issued a response to Plaintiff. (AF No. 34). In his response, Mr. Ruggs advised Plaintiff that she would need to follow HABD procedure for presenting her concerns to the Board of Commissioners. (AF No. 35).

On July 24, 2002, Plaintiff issued a second memorandum. (AF No. 39). The second memorandum was addressed to the HABD Board of Commissioners. (AF No. 40). The second memorandum reiterated the charges of fraud, cover up, corruption, and coercion in relation to the reimbursement to Moore. (AF No. 41). In her July 24, 2002 memo to the Board, Plaintiff admits again that "had Mr. Pegues kept his promise of a position upgrade to Manager of Utility Operations, I [Tator] would not have attempted to uncover probable, past cases of utility fraud . . . ." (AF No. 42). The memorandum went further to accuse Jimmie Lacey of fraud, and Mr. Ruggs, General Counsel Naomi Truman, and Mr. Pegues of conspiracy to conceal fraud. (AF No. 43).

On July 25, 2002, Mr. Pegues issued a memorandum to Plaintiff advising that an independent

4

investigation would be conducted to determine the truth of her accusations. (AF No. 44). The memorandum further advised Plaintiff that making false allegations of this nature was a violation of HABD policy. (AF No. 45). Plaintiff wrote a response to Mr. Pegues' memorandum repeating many of her allegations, and again emphasizing her desire for a position upgrade. (AF No. 46).

Although Plaintiff disputes the notion that she ever made any false statements in her grievances about HABD, the evidence that she refers to does not factually support the substance of the statements she included in her grievances – that HABD committed fraud in reimbursing Moore for food spoilage due to power discontinuation. (DF Nos. 47, 48, 49). The stated reasons for Plaintiff's termination were: (1) making false claims for self gain, and (2) improperly managing HABD utility accounts, resulting in accounts being disconnected. (AF No. 56).

HABD maintains a three step appeal process for employees seeking review of disciplinary action. (AF No. 64). When an employee is terminated, Steps 1 and 2 of that process are combined. In other words the aggrieved employee goes immediately to Step 2. (AF No. 65). Plaintiff sought an appeal, and HABD issued a written opinion. (AF No. 69). Plaintiff received notice of the adverse decision by certified mail on October 21, 2002. (AF No. 70). On or about October 24, 2002, Plaintiff submitted a request to appeal the termination decision to the Board of Commissioners, which is Step 3 of the process. (AF No. 71). The Board of Commissioners did not review her appeal. (AF No. 74). Plaintiff filed her lawsuit on April 7, 2003. (AF No. 79).

## III.   SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

5

judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *See id.* at 323. Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *See id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. *See Fitzpatrick*, 2 F.3d at 1115-17 (citing *United States v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991) (en banc)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial. *See Fitzpatrick*, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating

a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires that the movant point out to the district court that there is an absence of evidence to support the non-moving party's case. *See Fitzpatrick*, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts. *See Lewis v. Casey*, 518 U.S. 343, 358 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

## IV.    ANALYSIS

### A.    **Procedural Due Process**

7

The Fourteenth Amendment limits the power of state governments as follows:

No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

The statutory vehicle for implementing the Fourteenth Amendment against state governmental entities is 42 U.S.C. § 1983 which provides as follows:[6]

Every person who under color of any statute, ordinance, regulation, custom, or usage . . . subjects . . . any person with the jurisdiction thereof to the deprivation of any rights, privilege, or immunity secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Generally, ordinary dismissals from government service which violate no fixed tenure or applicable statute or regulation are not subject to judicial review even if the reasons for the dismissal are alleged to be mistaken or unreasonable. *Connick*, 461 U.S. at 146-47 (citing *Roth*, 408 U.S. 564; *Perry,* 408 U.S. 593; *Bishop v. Wood,* 426 U.S. 341, 349-50 (1976) ("The federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies . . . . The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions." )).

With these principles in mind, the constitutional issues presented are: (1) does Plaintiff have a protectable interest in continued employment with HABD; (2) did the process available to review Plaintiff's discharge comport with due process requirements; and (3) does Plaintiff have a viable free speech claim?

---

[6]For the purpose of its analysis, the court assumes that HABD is a state actor and falls under the purview of 42 U.S.C. § 1983.

### 1.    Does Plaintiff Have a Cognizable Protected Property Or Liberty Interest in Continued Employment?

As to the first question, to establish a procedural due process claim under the Fourteenth Amendment, a plaintiff must first prove that the governmental action deprived her of an identifiable "liberty" or recognized "property" interest. *Bd. of Regents v. Roth*, 408 U.S. 564, 569-571 (1972). If the deprivation of such an interest is established, a plaintiff must then demonstrate that it was taken without providing a procedure which meets the requirements of due process. *See id.* at 569-70 ("When protected interests are implicated, the right to some kind of prior hearing is paramount.") (footnote omitted). Plaintiff's ability to demonstrate that she has a cognizable protected interest in continued employment with HABD is dubious at best.

### a.    Evaluation of Property Interest

A person employed in the public sector has a property interest protected by the due process clause only if there is a "legitimate claim of entitlement" to that position. *Roth,* 408 U.S. at 577; *Perry v. Sinderman*, 408 U.S. 593, 601(1972). Because Plaintiff cannot show a "legitimate claim of entitlement" to the position of utility analyst, she does not have a property interest in the job.

In *Roth,* the court held that a non-tenured teacher had no claim of entitlement, and therefore, no property interest that required a hearing upon the non-renewal of the teaching contract. *Roth*, 408 U.S. at 566, 578; *see Perry,* 408 U.S. at 599 n.5. The court differentiated between the teacher's "abstract interest" in being rehired and having a property interest sufficient to require a hearing. *Roth,* 408 U.S. at 578. The court explained that a property interest "is a safeguard of the security of interest that a person has already acquired with specific benefits." *Id.* at 576. A property interest is

9

more than an "abstract need or desire for it" or a "unilateral expectation of it" but rather a "legitimate claim of entitlement." *Id.* at 577. How a person acquires a legitimate claim of entitlement to property interests is determined not by the United States Constitution, but rather by rules created by other sources, such as state law. *Id.*

State law governs the operation of HABD, giving it authority to do whatever is necessary to exercise its power. Ala. Code, 1975 § 24-1-24. Therefore, HABD had statutory authority to create its own personnel policies and procedures. Per HABD's personnel policies, Plaintiff was an at-will employee (Doc. #31 at Ex. Q). Consequently, like the non-tenured teacher hired on a year-to-year basis in *Roth*, Plaintiff had no legitimate expectation of entitlement to continued employment with HABD and, therefore, no cognizable property interest.

Consideration of the implied contract rule found in *Hoffman-La Roche, Inc. v. Campbell*, 512 So. 2d 725 (Ala. 1975) does not require a different result because Plaintiff cannot satisfy the necessary elements stated in that case. More specifically, Plaintiff has not pointed to any evidence in the record which supports the *Hoffman-La Roche* three-part test.[7] Also, the manual in question expressly clarifies that Plaintiff is an at-will employee and reserves the employer's right to exercise discretion; therefore, it does not mirror the type of handbook analyzed in *Hoffman-La Roche*, which was considerably more mandatory in nature.[8] (Doc. #48 at Ex. A at Bates 264). The extended

---

[7]For an implied contract to exist under Alabama law, a plaintiff must show : "(1) that there was a clear and unequivocal offer of lifetime employment or employment of definite duration; (2) that the hiring agent had authority to bind the principal to permanent employment contract; and (3) that the employee provided substantial consideration for the contract separate from the services to be rendered and employee must have provided substantial consideration for contract separate from services to be rendered[.]" *Hoffman-La Roche*, 512 at 728 (citations omitted).

[8]The HABD handbook specifically states to employees in bold capitalized letters that:

duration of Plaintiff's employment with HABD alone does not automatically transform her at-will employment arrangement to one of entitlement. Therefore, unlike the scenario in *Hoffman-La Roche*, the HABD manual does not become a binding promise upon the acceptance by an employee through continued employment.

#### b.    Evaluation of Liberty Interest

Liberty interests secured by the Fourteenth Amendment include the right to work. *Roth,* 408, U.S. at 572.  In *Roth*, the Court explained that a liberty interest might be infringed upon if, in not renewing the teacher's contract, the state had made a charge against the teacher that would damage his reputation in the community or attach a stigma to him and impede his ability to find another job. *Id.* But that was not the situation in *Roth,* and so the court concluded that no liberty interest had been violated. *Id*. at 573.

The Eleventh Circuit followed similar guidelines in *Buxton v. Plant City,* 871 F.2d 1037 at 1042-43 (11th Cir. 1989).  In a case of first impression in the circuit, the court, in agreeing with the

---

**EMPLOYMENT AT THE HOUSING AUTHORITY OF THE BIRMINGHAM DISTRICT IS AT WILL. THIS MANUAL IS BEING USED AS A METHOD TO COMMUNICATE THE POLICIES TO EMPLOYEES. THIS MANUAL IS NOT AN EMPLOYMENT CONTRACT. ALL INTERPRETATIONS, REVISIONS, MODIFICATIONS, SUMMARIES, REPORTS, HANDBOOKS, PROCEDURES, APPLICATIONS, OR PRACTICES UNDER THIS POLICY DO NOT EXPRESSLY OR BY IMPLICATION CREATE ANY GUARANTEE OR RIGHT OF EMPLOYMENT. AN EMPLOYEE MAY VOLUNTARILY SEPARATE/TERMINATE OR MAY BE SEPARATED OR TERMINATED FROM EMPLOYMENT AT ANY TIME WITHIN OR OUTSIDE THE INTRODUCTORY PERIOD, WITH OR WITHOUT CAUSE, AND WITH OR WITHOUT NOTICE. THE HABD MAY DEVIATE FROM ANY OR ALL OF THESE POLICIES AND PROCEDURES AT ANY TIME AND/OR CHANGE ANY OR ALL OF THEM AT ANY TIME WITHOUT NOTICE.**

(Doc. #48 at Ex. A at Bates 264).

district court, held that to establish a deprivation of a liberty interest without due process of law, a plaintiff must show: "(1) a false statement (2) of a stigmatizing nature (3) attending a governmental employee's discharge (4) made public (5) by the governmental employer (6) without a meaningful opportunity for [an] employee name clearing." *Id.* at 1042-43. (footnotes omitted). The Eleventh Circuit further indicated that the element of stigmatizing nature means damages to a person's "good name, reputation, honor, or integrity." *Id.* at 1043 n.5. (citation omitted).

In the instant case, Plaintiff's termination notice accused her of making false statements. (Doc. #31 at Ex. L). There is no evidence that the reasons for Plaintiff's discharge were ever made public by HABD. Furthermore, Plaintiff has presented no evidence that HABD's finding that she made false statements will affect her ability to find work in the future. In fact, Plaintiff blames her lack of employment on the unemployment rate generally. (Doc. #31 at Ex. C at 10-11). Because the comments were not made public and do not affect Plaintiff's ability to find other employment, no cognizable liberty interest exists and no need for a hearing is invoked under *Buxton.*

### 2.   To the Extent a Protected Interest Did Exist, Was Satisfactory Procedural Process in Place and Available to Plaintiff?

Even assuming that Plaintiff were able to establish either a cognizable protected property or liberty interest, her procedural due process rights were satisfied by HABD's post-discharge appeals process. "[D]ue process is flexible and calls for procedural protection as the particular situation demands." *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972). Under the procedural component of the due process clause, once a court finds that a person has been deprived of a protected interest, "the question remains what process is due." *Id.* The Supreme Court has made clear that, although the preliminary question on whether a property right exists may be one of state law, the question of what

12

procedures must be provided for the deprivation of such property right is one of federal constitutional law. *See Cleveland Bd. of Ed. v. Loudermill,* 470 U.S. 532, 541 (1985). That is,

> [t]he right to due process 'is conferred, not by legislative grace, but by constitutional guarantee. While the legislature may elect not to confer a property interest in [public] employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards.'

*Loudermill,* 470 U.S. at 541 (citation omitted).

Thus, the question for the court is not necessarily whether Plaintiff's discharge was in compliance with the written personnel procedures of the HABD, but rather whether those procedures, as applied to Plaintiff, satisfy constitutional procedural due process minima. The *Loudermill* Court explained that "[a]n essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" 470 U.S. at 542 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)). The Court described "the root requirement" of the Due Process Clause as being "that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest." *Loudermill,* 470 at 542 (footnote and citations omitted) (emphasis in original).

In *Loudermill*, the Court noted that the due process requirements for a tenured public employee include "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Loudermill,* 470 U.S. at 546. The Court further indicated that although the pretermination hearing does not need to be elaborate or to fully "resolve the propriety of the discharge," due process does require a hearing that is "an initial check against mistaken decisions--essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action."

13

*Id.* at 545-46 (citation omitted).[9]

Furthermore, while a pretermination hearing is normally required if a property interest is at stake, the Eleventh Circuit recognizes an exception to this rule. In *McKinney*, the Eleventh Circuit noted that procedural due process violation is not complete "'unless and until the State fails to provide due process.'" *McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994) (citation omitted). "In other words, the state may cure a procedural deprivation by providing a later procedural remedy; only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise." *McKinney*, 20 F.3d at 1557. Thus, in *McKinney,* where a plaintiff alleged that the decisionmaker at a termination hearing was biased, the state remedied the violation by providing an appeal to an unbiased decisionmaker. *McKinney,* 20 F.3d at 1563-64.

Against this legal backdrop, the court is persuaded that Plaintiff's procedural due process rights, to the extent that they do exist, have been protected. Plaintiff was initially discharged without a hearing but was given ample opportunity to have the decision reviewed and to give her side before it became final. (Doc. #31 at Ex. L, Ex. P). More specifically, HABD provides employees with a three-step appeal process which Plaintiff at least partially invoked. (Doc. #31 at Ex. A, Ex. R).

On September 17, 2002, HABD discharged Plaintiff and provided her a written explanation of the grounds for the firing. (Doc. #31 at Ex. L). On or about September 19, 2002, Plaintiff filed a Step 1 Appeal to review her dismissal. (Doc. #31 at Ex. A). Because it was an appeal challenging

---

[9]However, as discussed earlier, Plaintiff's employment is not comparable to that of a tenured government employee. Moreover, the Eleventh Circuit has recognized that where the purpose of the hearing is simply to allow the employee an opportunity to clear her name, a post-termination hearing is sufficient. *See, e.g., Campbell v. Pierce County, Georgia*, 741 F.2d 1342, 1345 (11th Cir. 1984).

14

a discharge, a Step 2 hearing was immediately available. (Ruggs Depo. at 70). Plaintiff presented her side at a hearing with the Executive Director on October 11, 2002. (Doc. #31 at Ex. A, Ex. P). Thereafter, a written opinion was issued. (Doc. #31 at Ex S). Plaintiff received notice of the decision via certified mail on October 21, 2002.[10]  (Doc. #31 at Ex. O).

Therefore, even if it can be shown that Plaintiff had a protected property or liberty interest entitling her to a pretermination hearing, HABD may correct the violation by providing a "later procedural remedy." *McKinney,* 20 F.3d at 1557. In this case, HABD had set in place a three-step appeal process which Plaintiff utilized following the termination. Plaintiff took advantage of that post-termination process. All the procedure that was due was provided by HABD. Therefore, as a matter of law, no procedural due process claim is available to Plaintiff.

### B.    Free Speech[11]

---

[10]Plaintiff made efforts to take advantage of the third step of the appeal process, which is a second hearing. The parties dispute exactly what transpired over this third step, but the second hearing never took place. The court is persuaded that (1) Plaintiff did not have a protectable interest in continuing employment, and, (2) in any event, HABD provided Plaintiff with the initial hearing and that more than adequately satisfied procedural due process. Therefore, the factual conflict over the third step of the appeal process is immaterial.

[11]Plaintiff also alleges a violation of equal protection but fails to state any supporting grounds for it, much less substantiate it with any record evidence. Accordingly, Plaintiff has abandoned the claim. *See, e.g.*, *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 (11th Cir. 2001) (finding claim abandoned when argument not presented in initial response to motion for summary judgment); *Bute v. Schuller International, Inc.,* 998 F. Supp. 1473, 1477 (N.D.Ga. 1998) (finding unaddressed claim abandoned); *see also Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta,* 219 F.3d 1301, 1326 (11th Cir. 2000) (failure to brief and argue issue at the district court is sufficient to find the issue has been abandoned). Plaintiff does not respond to this argument and thus is deemed to have abandoned this claim. *See Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir. 1995); *Hudson v. Norfolk Southern Ry. Co.,* 209 F. Supp. 2d 1301, 1324 (N.D.Ga. 2001). *Cf. McMaster v. United States,* 177 F.3d 936, 940-41 (11th Cir. 1999) (claim may be considered abandoned when district court is presented with no argument concerning a claim included in the plaintiff's complaint); *Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp.,* 10 F.3d 1563, 1568 (11th Cir. 1994) (concluding that a district court "could properly treat as abandoned

In *Gitlow v. New York,* 268 U.S. 652, 666 (1925), the Court held that the First Amendment right to free speech was incorporated into the Fourteenth Amendment, thus making it applicable to the states. In appropriate cases, First Amendment protection extends to communications between the employee and the public employer on issues of genuine public concern. *See, e.g., Givhan v. Western Line Consolidated School District,* 439 U.S. 410, 415-16 (1979). Thus, if Plaintiff's communications to her superiors at HABD involve a matter of public concern, her speech may be protected under the First Amendment.

However, while it is "well-established that the state may not demote or discharge a public employee in retaliation for speech protected under the first amendment, a public employee's right to freedom of speech is not absolute." *See Bryson v. City of Waycross,* 888 F.2d 1562, 1565 (11th Cir. 1989) (citation omitted). To prevail on a claim for unlawful retaliation under the First Amendment, the public sector employee must show that the speech in question was (1) on "a matter of public concern," (2) that the employee's First Amendment rights outweigh the employer's interest in "promoting the efficiency of the public services it performs through its employees[,]" and (3) that the protected speech was a "substantial motivating factor" in the adverse employment decision. *Bryson,* 888 F.2d at 1565 (citations omitted). Once the plaintiff makes this showing, the public employer then has the burden of proving by a "preponderance of the evidence that 'it would have reached the same decision . . . even in the absence of the protected conduct.'" *Bryson,* 888 F.2d at 1566 (citation omitted).

---

a claim alleged in the complaint but not even raised as a ground for summary judgment."). Therefore, there is no genuine issue of material fact as to plaintiff's claim of a violation of equal protection.

## 1.    Is the speech a matter of public concern?

Whether an employee's speech is protected is a threshold question of law. *Eiland v. City of Montgomery*, 797 F.2d 953, 957 n.5 (11th Cir. 1986).   The interest protected by the First Amendment in the public employment context is "'the interest of the [employee], as a citizen, in commenting upon matters of public concern[.]'"   *Connick v. Myers*, 461 U.S. 138, 142 (1983) (quoting *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968)).   The court must examine the "content, form, and context of a given statement, as revealed by the whole record[,]" to determine whether it is speech that touches matters of public concern.   *Eiland*, 797 F.2d at 956 n.4 (quoting *Connick*, 461 U.S. at 147-48).   At this initial stage of analysis, the plaintiff bears the burden of proof. *Ferrara v. Mills,* 781 F.2d 1508, 1514 (11th Cir. 1986).

The Eleventh Circuit has applied the *Connick* analysis in a case with markings very similar to this one.   In *Ferrara v. Mills,* a public school teacher pursued a free speech claim against various parties, including school administrators, in context of "speaking out against school policies."[12]  781 F.2d at 1511 (footnote omitted).   At the trial level, the district court determined "that '[Ferrara's] speech, while tangentially related to matters of public concern, constitute[d] nothing more than a series of grievances with school administrators over internal school policies' and, therefore, was not protected under the first amendment." *Id.* at 1511 (quoting *Ferrara v. Mills,* 596 F. Supp. 1069, 1071 (S.D. Fla. 1984)).

On appeal, the Eleventh Circuit affirmed and clarified that with respect to the levels of analysis concerning a free speech claim:

---

[12]Plaintiff's lawsuit also included a state claim for intentional infliction of emotional distress. 781 F.2d at 1511.

17

The manner, time, and place of the employee's speech are factors to be weighed in the *Pickering* balance of the employer's and employee's competing interests. These factors are not, however, relevant at the first level of the analysis. The *Pickering* balance is not triggered unless it is first determined that the employee's speech is constitutionally protected. If the employee's speech does not relate to matters of public concern, then the employee has no first amendment interest against which the employer's interest need be weighed.

781 F.2d at 1513-14 (citations and footnote omitted). In finding no protected speech, the court

rejected the plaintiff's argument that "issues relating to public education are intrinsically matters of

vital public concern" and pointed out:

To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark--and certainly every criticism directed at a public official--would plant the seed of a constitutional case. *Connick*, 461 U.S. at 149. It is precisely because virtually all speech which is made in and about a public employment setting will have some public significance that we must focus upon the content, form, and context of the speech to determine whether the speech is constitutionally protected.

781 F.2d at 1515 (parallel citations omitted).

Similarly, in this case Plaintiff's complaints relate to the internal policy at HABD for utility account management and whether Plaintiff was to blame for improper disconnects. Additionally, at least one of the solutions proposed by Plaintiff as a result of her speech was self-gain through a position upgrade, which is a personal concern. Therefore, in examining the content, form, and context of Plaintiff's speech, the court is persuaded that she has not carried her burden of proof that her statements involve matters of public concern, thereby warranting constitutional protection.

## 2. Application of the Balancing Test

Even assuming that Plaintiff's speech is constitutionally protected (and it is not), there is another basis for granting HABD's summary judgment motion on her free speech claim. When applying the balancing test, it is plain that Plaintiff's First Amendment rights are outweighed by

HABD's interests as a public employer. In *Connick v. Myers*, the Supreme Court reiterated the balancing test for determining whether the subject speech is protected and whether the governmental entity's interest in suppressing the speech is warranted. *Connick*, 461 U.S. at 156-57.

The HABD had a legitimate interest in addressing Plaintiff's speech which was deemed to be disruptive and accusatory in contradiction to HABD policy which prohibits false charges from being levied by an employee. (Doc. #31at Ex. L, Ex. A). Plaintiff admits that her speech was motivated in part by her desire for a promotion and an increase in responsibilities by increasing the scope of her position. (Doc. #31 at Ex. C at 74-76). There is no compelling governmental interest in protecting Plaintiff's speech concerning her disagreement with her superior's decision to pay a resident a nominal amount of money for what was, at the time, determined to be an improper disconnection of power. Hence, there was no violation of law when HABD dealt with Plaintiff's statements based upon its policy which prohibits an employee from making disruptive charges about her employer.

Also weighing into the court's analysis is Plaintiff's inability to effectively substantiate her statements. (Doc. #31 at Ex. P; Ex. C at 55, 90, 91, 113, 114). The record evidence suggests that primarily Plaintiff did not want to be blamed for Moore's loss of power. (Doc. #31 at Ex. C at 18, 20, 40, 84, 107). Additionally, any public interest in the nominal sum of money that HABD reimbursed Moore for the spoiled food is minimal, at best. (Doc. #31 at Ex. B). Therefore, applying the balancing test leads to the conclusion that, to the extent that Plaintiff has even established protected speech, she has not shown that her rights outweigh HABD's interest in promoting efficiency of its public services.

19

### 3. Lack of Casual Connection

When evaluating retaliation claims, the courts have looked to see if there was an elapse of time between the protected activity and the subsequent dismissal. When there is such an elapse, it has been found that the link necessary to support a retaliation claim does not exist. *See Clark County School District v. Breeden*, 532 U.S. 268, 273-74 (2001) ("Action taken (as here) 20 months later suggests, by itself, no causality at all.") (citing affirmatively several court of appeals cases for the proposition that a three to four month gap is not enough); *Higdon v. Jackson*, No. 03-14894, 2004 WL 2903979, at *7 (11th Cir. Dec. 16, 2004) (relying upon *Breeden* opinion and concluding that 3-month period is insufficient); *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001) (recognizing that temporal proximity must be very close); *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (finding that 3-month period is insufficient); *Hughes v. Derwinski*, 967 F.2d 1168, 1174-75 (7th Cir. 1992) (determining that 4-month period is insufficient).

In this case, Plaintiff made an initial complaint alleging fraud on January 24, 2002. Plaintiff admits that she withdrew that complaint once she was promised a promotion. (Doc. #31at Ex. C at 46, 50, 149-150). Only when Plaintiff did not receive her promotion in June 2002 did she decide to renew her grievance the following month. (Doc. #31 at Ex. C. at 57-62; Doc. #31at Ex. G). Plaintiff's intervening retraction on February 19, 2002, and subsequent renewal of her fraud complaint on July 24, 2002 (because she did not get the promotion that she was promised), effectively serve as breaks in the causal link chain.[13] As such, Plaintiff's free speech claim fails for causation deficiencies as well.

---

[13]Because the court is persuaded that Plaintiff has failed to establish a causal connection on her free speech claim, it does not need to address HABD's other stated basis for discharging Plaintiff–her alleged improper management of HABD accounts.

20

**C.     Alabama Whistle Blower Act**

Having ruled that HABD is entitled to judgment as a matter of law on Plaintiff's federal claims, the court declines to exercise jurisdiction over Plaintiff's state law whistle blower claim under Alabama Code, § 36-25-24(a). *See* 28 U.S.C. § 1367(c)(3).

**V.     CONCLUSION**

As stated above, no material factual disputes exist, and HABD is entitled to judgment as a matter of law on Plaintiff's federal law claims. The court declines to exercise jurisdiction over Plaintiff's state law claim. Accordingly, the court will enter an order consistent with this opinion.

**DONE** and **ORDERED** this _____19th_____ day of January, 2005.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE